UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY BROOKS,<br>    Plaintiff<br><br>V.<br><br>WOODS HOLE, MARTHA'S<br>VINEYARD AND NANTUCKET<br>STEAMSHIP AUTHORITY,<br>    Defendant | Civil Action<br><br>No. 05-11861-MLW |
| MARK LALIBERTE,<br>    Plaintiff<br><br>V.<br><br>WOODS HOLE, MARTHA'S<br>VINEYARD AND NANTUCKET<br>STEAMSHIP AUTHORITY,<br>    Defendant | Civil Action<br><br>No. 05-11224-MLW |

PLAINTIFFS' OPPOSITION TO:

DEFENDANTS MOTION FOR A PROTECTIVE ORDER

Now comes the Plaintiffs in the above captioned matter and opposes Defendant's Motion for a Protective Order. As grounds thereof the Plaintiffs state as follows.

I.  Background

On August 4, 2003 the Defendant's vessel was conducting a man overboard drill in connection with a Coast Guard inspection. During the course of the drill the rescue boat overturned sending both Plaintiff's in the water whereupon a line wrapped around Plaintiff's leg

and dragged him behind the Defendant's vessel for several minute resulting in his suffocation. Plaintiff Brooks was eventually rescued by Plaintiff LaLiberte how performed CPR and was able to revive him.  In connection with the incident the defendant's Captain, Mate/Pilot and Bosun all received citations from the Coast Guard for negligence.  As a result of the incident the vessel's captain's license was suspended.  As a result of the incident the Defendant, as a corporate entity was charged by the USCG with violation of 46 CFR199.180(a).  <u>See</u>, <u>U.S.C.G. Enforcement Summary</u> (Attached as Ex. "A").  Upon unconfirmed information and believe, the Defendant plead guilty to the violation and paid the recommended Penalty.  Plaintiff has asserted several theories of liability against the Defendant based upon the negligence of fellow crewmembers, unseaworthiness, and negligence per se for violation of Coast Guard regulations.  <u>See</u>, <u>Kernan vs. American Dredging Co.</u>, 355 U.S. 426, 78 S.Ct. 394 (1958)

Plaintiffs have scheduled the Defendant's 30(b)(6) deposition four times.  The first three scheduled depositions where cancelled by the Defendant.  Defendant now seeks to stop this deposition by way of a motion for a protective order.

By recent pleading the Defendant has stipulated to both Count I (Negligence) and Count II (Unseaworthiness) of Plaintiffs' Complaints.  However the Defendant has asserted a claim of Contributory Negligence claiming that the Plaintiffs' injuries are caused by their own negligence.  In light of their stipulation to negligence and unseaworthiness, Defendant seeks to quash any further discovery relating to Defendant's regulatory violations and other aspects of Defendant's liability.

II.    <u>LAW</u>

    A.    <u>Negligence per se</u>

2

A maritime employer's violation of a Coast Guard safety regulation that causes a seaman's injury or death constitutes negligence per se.  Kernan v. American Dredging Co., 355 U.S. 426, 432-433, 78 S.Ct. 394, 398 (1958); see also Moody v. Boston and Maine Corporation, 921 F.2d 1, 4 (1st Cir. 1990) (FELA case); Pratico v. Portland Terminal Company, 783 F.2d 255, 263 (1st Cir. 1985) (FELA case); Smith v. Trans-World Drilling Co., 772 F.2d 157, 160-161 (5th Cir. 1985); Reyes v. Vantage S.S. Co., 609 F.2d 140, 143 (5th Cir.) ("The failure to follow any Coast Guard regulation which is a cause of an injury establishes negligence per se."), quoted in Pratico, supra.  Kernan further held as follows:

> [T]he basis of liability is a violation of statutory duty without regard to whether the injury flowing from the violation was the injury the statute sought to guard against.  It must therefore be concluded that the nature of the Acts violated is not a controlling consideration. . . .

Kernan, supra at 438, 78 S.Ct. at 401, quoted in Moody, supra.

    B.    The Pennsylvania Rule

In The Pennsylvania, the Supreme Court held that, in a collision case, where one party violates a statute intended to prevent a collision, the burden of proof shifts to that party to establish that the violation "could not have been" a cause of the collision.  The Pennsylvania, 86 U.S. (19 Wall) 125, 136 (1873) (the burden rests upon the offending party to show "not merely that [his] fault might not have been one of the causes, or that it probably was not, but that it could not have been" one of the causes").  The Supreme Court held that "such a rule is necessary to enforce obedience to the mandate of the statute."  Id.

The Pennsylvania Rule "does not establish fault." Continental Grain Co. v. Puerto Rico Maritime Shipping Authority, 972 F.2d 426, 436 (1st Cir. 1992).  "It serves solely to shift the

3

burden of proof on the issue of causation once a claimant has established that a vessel has violated a statute or regulation." Id.

While the Pennsylvania Rule was initially applied only to cases involving collisions between vessels, the First Circuit and others have expanded the application of the Pennsylvania Rule to cover violations of all types of Coast Guard regulations and all types of marine casualties. Id. In Continental Grain, the First Circuit held that the Pennsylvania Rule applied to all maritime casualties including the "capsizing and sinking of a vessel." Id. The Court stated:

> Given the policy underlying the rule, that is to assure strict compliance with rules pertaining to the safe operation of ships, we see no reason why the rule should not apply to the capsizing and sinking of a vessel as well as to a stranding.

Id. Other circuits have also expanded the application of the Pennsylvania Rule to cover maritime cases not involving collisions. See, e.g., Folkstone Maritime Inc. v. CSX Corp., 64 F.3d 1037 (7th Cir. 1995) (allision case); Candies Towing Co., Inc. v. M/V B&C Eserman, 673 F.2d 91 (5th Cir. 1982) (sinking with cargo loss); Reyes, supra (Jones Act death case); In re Seaboard Shipping Corp., 449 F.2d 132 (2nd Cir. 1971), cert. den., 406 U.S. 949, 92 S.Ct. 2038 (1972) (limitation proceeding involving drowning of seamen); Waterman S.S. Corp. v. Gay Cottons, 414 F.2d 724, 737 (9th Cir. 1969) (the Pennsylvania Rule also applies "to failure to provide equipment required by statute"); Smith v. Mitlof, 130 F.Supp.2d 578 (S.D.N.Y. 2001) (passenger case). As noted above, the Pennsylvania Rule involves not only a shifting of the burden of proof but also as a matter of substantive law, an increase in the level of certainty of proof. Once a party proves a violation of an applicable Coast Guard regulation, the violating party has the burden of proving that the violation could not have caused injury or death.

C.      Effect of Coast Guard Violation Upon Comparative Fault (Sec. 53)

Under the Jones Act, a seaman cannot be found to be comparatively negligent where the employer is found to have violated a safety statute or regulation and where the violation is a cause of the seaman's injury or death.  45 U.S.C. §53;[1] Kernan, supra at 435, 78 S.Ct. at 399; Pratico, 783 F.2d 255, 267-268;  Roy Crook and Sons, Inc. v. Allen, 778 F.2d 1037, 1040, 1043 (5th Cir. 1985) ("[B]oth Kernan and Neal make it clear that Section 53 of the FELA is part of the Jones Act."); Fuszek v. Royal King Fisheries, Inc. 98 F.3d 514, 516-517 (9th Cir. 1996); Neal v. Saga Shipping Co., 407 F.2d 481, 486 (5th Cir. 1969), cert. den., 395 U.S. 986, 89 S.Ct. 2143 (1969) ("By virtue of the Jones Act, Section 53 of the FELA has been applied to violations of maritime safety statutes . . . .");.

D.      "Comparative Fault" involves comparing the fault of the parties

Defendant has sought a protective order to quash the Defendant's 30(b)(6) deposition claiming that "the only issues to be resolved at the time of trial will be the plaintiff's contributory negligence, the nature and extent of theier damages and issues relating to their claims for maintenance and cure".  Defendant's Motion, P. 2.  "Unlike at common law, in both Jones Act and unseaworthiness actions, neither assumption of the risk nor contributory negligence are available as complete defenses to liability.  Instead the admiralty doctrine of comparative negligence applies".  Wilson vs. Maritime Overseas Corp., 150 F.3d 1, 11 ( 1st Cir)(emphasis added).   Under the doctrine of comparative negligence the fact finder must assess the degree to which the fault of each of the parties caused or contributed to the damage

---

[1]     This is the FELA comparative negligence statute, which states, inter alia, as follows: "[N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury of

and apportion damages accordingly. Beadle v. Spencer, 56 S.Ct. 712, 715 (1936). In U.S. vs. Reliable Transfer, Co. Inc., the Supreme Court noted the success of the comparative negligence doctrine within the maritime personal injury law and held that the doctrine of comparative negligence applied to all maritime torts. U.S. vs. Reliable Transfer, Co. Inc., 421 U.S. 397, 95 S.Ct. 1708, 1713 (footnote #13) , 1714 (1975).   Inherent in any apportionment of fault between the Plaintiff and the Defendant is an evaluation of the fault of both parties and the degree to which that fault caused or contributed to the damages.

III.	ARGUMENT

The noticed 30(b)(6) deposition topics 1, 2, 3, and 4 all relate to discovery concerning whether the Defendant and/or its officers violated applicable USCG regulation in connection with the incident.  As noted above, if the Plaintiffs are able to establish that the Defendant violated a coast guard regulation they may be able to eliminate any comparative fault as a matter of law.    Accordingly discovery on these topics relates to existing claims in the case and should be allowed.

The 30(b)(6) deposition topics 6, and 7[2] relate directly to contributory negligence and therefore are discoverable.

The 30(b)(6) deposition topics  10 and 11 relate to maintenance and cure and therefore are discoverable.

The 30(b)(6) topic 13 relates to the value of fringe benefits and hence lost wages and therefore is discoverable.

---

death of such employee.

[2] After Defendant stipulated to liability Plaintiff removed some of the

The 30(b)(6) topics 21 and 22 relating to the hook on the lifeboat are relevant to the issue of Plaintiff Mark LaLiberte's contributory negligence and the Defendant's comparative negligence.

30(b)(6) deposition topic 21 (the second 21) requests that the Defendant produce a spokesperson to testify whether documents contained upon an attached list exist and if so their current location. The documents contained within the list represent 16 types of documents culled from an original request for 62 types of documents. All of these documents where requested a long time ago. Defendant responded to these requests with frivolous objections[3] and in its motion does not assert any substantive objections to the production of these documents.

Finally 30(b0(6) topic 22 (second 22) requests that the Defendant produce a spokesperson to testify as to the Defendant's Answers to interrogatories. Defendant has objected on the grounds that this topic would require the Defendant to produce several individuals. These interrogatories were answered under oath and signed by one individual. Only that individual need appear to discuss his answers.

Finally on page 4 of <u>Defendant's Motion for a Protective Order</u> the Defendant argues that "Plaintiffs are in possession of the civil citation that the U.S. Coast Guard issued to the Defendant as a result of the incident". This is simply not true. The only documentation relating to the citation in the possession of the Plaintiff is attached to this opposition. After receipt of Defendants Motion Plaintiff requested this document from the Defendant as well as a copy of Defendants response to the citation. At present the Defendant has produced nothing. However

---

```
deposition topic resulting in "missing" topic numbers
3  For example the Defendant objected to producing the vessel's log for the
time period in question on the grounds that "it is unduly burdensome and seek
```

even if the Plaintiff was in possession of a copy of the original citation and Defendant's response, Plaintiff's would still be entitled to conduct discovery so as authenticate and lay a foundation for the introduction of the citation and response into evidence.

WHEREFORE, the plaintiff respectfully requests that this Honorable Court Deny Defendant's Motion for a Protective Order

          Respectfully submitted,
          Barry Brooks, Plaintiff,
          Mark LaLiberte, Plaintiff
          By their attorneys,

          _____
          David F. Anderson
          BBO #560994
          Carolyn M. Latti
          BBO #567394
          Latti & Anderson LLP
          30-31 Union Wharf
          Boston, MA 02109
          (617) 523-1000

Dated: 07-31-07

---

documents not likely to lead to the discovery of admissible evidence". Def. Objection #7.

Activity # 2105629

| UNITED STATES OF AMERICA | DEPARTMENT OF HOMELAND SECURITY | |
|---|---|---|
| **UNITED STATES COAST GUARD** | | |
| Charged Party<br>NANTUCKET STEAMSHIP AUTHORITY | Enforcement Activity #<br>2105629 | Originating Unit<br>MSO Providence |
| **Enforcement Summary** | Violation Location<br>VINEYARD HAVEN HARBOR | |
| | Violation Date<br>04 Aug 2003 | |

### Summary of Current Violation(s)

| Law/Reg | Description | Recommended Penalty |
|---|---|---|
| 46 CFR 199.180(a) | Failure to comply with training requirements. | $1000 |

### Narrative Overview of the Activity

During the course of the investigation the Coast Guard found that Woods Hole Martha Vineyard, Nantucket Steamship Authority (SSA) failed to provide a required training manual on board M/V ISLANDER to comply with 46 CFR 199.180(a)(b). This cite states that training material must be on board each vessel and must consist of a manual or audiovisual aids. Part of the training manual would also include procedures for the boarding, launching and clearing rescue boats.

On August 4, 2003 the M/V ISLANDER was conducting a man overboard drill for a Coast Guard annual inspection. Due to the lack of standard procedures required in 46 CFR 199.180(a)(b) the crew was confused about their individual responsibilities and how to properly conduct the man overboard drill scenario. This led to the loading and lowering of the vessel's rescue boat without the captain's permission. While the captain was maneuvering the M/V ISLANDER closer to the rescue dummy he was not aware that the rescue boat was in the water still attached to the davit. Moving the vessel caused the rescue boat to flip over throwing two crewmen into the water seriously injuring one.

CG 835 (report of discrepancies) was issue by marine inspectors to correct the problem.

Recommend civil penalty in accordance with G-MOA policy letter 2-03. This is SSA second offence in 12 months.

LT ▓▓▓▓

### Charged Party's Particulars

| Name<br>**NANTUCKET STEAMSHIP AUTHORITY** | Capacity in which Charged<br>owner | ID<br>N/A |
|---|---|---|
| Street<br>PO BOX 284<br>FOOT OF RAILROAD AVENUE | | |

| City<br>WOODS HOLE | State<br>MA | Zip<br>02543 | Country<br>US |
|---|---|---|---|
| Phone | | Fax | |

### Involved Subjects

| Vessel Name<br>ISLANDER | Primary VIN<br>259789 | Role<br>Involved in a Marine Casualty |
|---|---|---|
| Waterway Name<br>VINEYARD HAVEN HARBOR | Local Name | Description<br>VINEYARD HAVEN HARBOR, MA |

### Other Involved Parties (besides Charged Party)

Name

Activity # 2105629

| ██████████ | |
|---|---|
| Role | ID |
| Eye-Witness | N/A |

| Past Violation(s) History ||
|---|---|
| **No prior violations** ||

Activity # 2105629

| 1st Charge | |
|---|---|
| Law or Regulation Cite | 46 CFR 199.180(a) |
| Description | Failure to comply with training requirements. |
| Statutory Authority | 46 USC 3306 |
| Max Penalty | $6500 |
| Recommended Penalty: | $1000 |
| Date of the Violation | 04 Aug 2003 |
| Location | VINEYARD HAVEN HARBOR |

## Details of the Violation

### Jurisdictional Elements

1. WOODS HOLE MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY is charged as the owner of ISLANDER.
2. VINEYARD HAVEN HARBOR is under the jurisdiction of OCMI Providence.

### Factual Elements

1. M/V ISLANDER is owned and operated by Woods Hole, Martha Vineyard and Nantucket Steamship Authority (SSA) and was operating on a routinely schedule trip on August 4, 2003.
2. Woods Hole, Martha Vineyard and Nantucket Steamship Authority was responsible as the owner and operator of the M/V ISLANDER to have a training manual that complies with the requirement in 46 CFR 199.180.
3. On August 4, 2003 the M/V ISLANDER did not have a training manual on board as required by 46 CFR 199.180.
4. The failure of the Woods Hole, Martha Vineyard and Nantucket Steamship Authority to have a training manual in accordance with 46 CFR 199.180 on board the M/V ISLANDER on August 4, 2003 was a contributing factor to the accident that occurred on that day injuring two crewmen.

### Aggravating/Mitigating Factors

1. 1. Gravity: Failure to have the required procedures in place led to the capsizing of the rescue boat on the M/V ISLANDER (259789) during a training drill injuring of two crewmen.
2. Culpability: The Woods Hole, Martha Vineyard & Nantucket Steamship Authority is responsibility for providing and maintaining a training manual which would include procedures for conducting a man overboard drill and rescue boat launching.
5. Demonstrated good faith: SSA has began providing bridge management training for officers, rescue boat operation training for crewmen and is working on a comprehensive training manual for all its large ferries regulated under sub chapter "W".

Activity # 2105629

**The Coast Guard has introduced the following exhibits:**
1. Exhibit Label: 01
    Evidence Desc: ▓▓▓▓▓▓▓▓▓▓ STATEMENT
    Exhibit Desc: Inspectors statement

2. Exhibit Label: 02
    Evidence Desc: IO narrative from incident investigation
    Exhibit Desc: